# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| DENNIS L.,<br><br>        Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,<br><br>        Defendant. | Civil Action<br>No. 20-12362 (CPO)<br><br>**OPINION** |

**Appearances:**

Richard Lowell Frankel
Bross & Frankel, PA
725 Kenilworth Ave
Cherry Hill, NJ 08002

    *On behalf of Plaintiff Dennis L.*

Quinn Niblack-Doggett
Social Security Administration
Office Of The General Counsel
300 Spring Garden Street
Philadelphia, PA 19123

    *On behalf of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.*

**O'HEARN, District Judge.**

    I.      **<u>INTRODUCTION</u>**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Dennis L.[1] for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the following reasons, the Court affirms the Commissioner's decision.

    II.      **<u>BACKGROUND</u>**

The Court recites herein only those facts necessary for its determination on this Appeal.

        A.      **Administrative History**

Plaintiff protectively filed a Title II application on July 17, 2015, for a period of disability and disability insurance benefits. (R. 12). Plaintiff also protectively filed a Title XVI application on January 12, 2016, for supplemental security income. (R. 12). In both applications, Plaintiff alleged disability beginning February 27, 2012. (R. 12). These claims were initially denied on May 24, 2016. (R. 12). Upon reconsideration on November 10, 2016, the claims were denied again. (R. 12). Plaintiff filed a written request for hearing on December 8, 2016. (R. 12). Accompanied by counsel, Plaintiff appeared and testified at a hearing held on January 25, 2019, in Pennsauken, NJ. (R. 12). After the hearing, the Administrative Law Judge ("ALJ") found that Plaintiff was not

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by his first name and last initial.

2

disabled in a decision dated May 3, 2019. (R. 26). The Appeals Council denied his request for review on July 7, 2020. (R. 1). Plaintiff now appeals to this Court. (Compl., ECF No. 1).

### B. Plaintiff's Background and Testimony

Plaintiff is a forty-five-year-old man who lives with his wife and three children. (R. 24, 45). Plaintiff has at least a high school education and is able to communicate in English. (R. 25). He alleges that he became disabled February 27, 2012, due to a number of serious physical and mental conditions. (R. 12). Plaintiff served in the United States Army from May 02, 2002 to July 01, 2003, and received an honorable discharge after injuring his knee. (R. 265, 53). He has health insurance through the Veterans Administration ("VA"). (R. 53).

In his initial complaint, Plaintiff complained of a number of functional limitations including, but not limited to, degenerative disc disease, degenerative joint disease, osteoarthritis, asthma, De Quervain's tendinitis, obesity, and major depressive disorder. (R. 1). Plaintiff testified that he experiences sharp stabbing pain in his back, shoulders, neck, and hands "all day," "every day." (R. 59). He detailed the medications he takes which "reduce the pain to a point where I have a bit of quality life, but . . . never gets totally rid of it," and the accompanying side effects including memory loss, confusion, loss of equilibrium, and feeling lightheaded or dizzy. (R. 61–62). Plaintiff testified that he needs to elevate both his legs for about twenty minutes every hour, eight to twelve times a day (R. 47–48, 58–59). At the hearing, Plaintiff requested an additional chair placed next to him so that he could elevate his legs and testified that this would help with "pain, swelling, and . . . [his] back." (R. 47). Plaintiff also testified that he suffered from anxiety and depression which sometimes cause him to be unable to process change, struggle with anger, and stay in bed for days at a time. (R. 64, 65).

Plaintiff had previously been employed by Village Supermarket as a chef. (R. 57–58). He was subsequently employed by Wawa until he "was terminated . . . because [Wawa] no longer wanted to keep [him] employed with [his] restrictions." (R. 54). Plaintiff then volunteered with his church's youth group until his physical limitations and anxiety caused him to stop, shortly before his second knee replacement. (R. 57).

### C. Relevant Medical History

The Court will briefly summarize the relevant medical evidence for purposes of this Appeal. This recitation is not comprehensive.

1. <u>Veterans Administration Medical Center</u>

Plaintiff received treatment from many pain specialists at the VA. The VA diagnosed Plaintiff with degenerative disc disease of the lumbosacral spine, degenerative join disease of the knees, asthma, De Quervain's tendonitis, diabetes, hypertension, obesity, and a major depressive disorder. (R. 966–1340, 1411–1413, 1435–1456, 1494–1570, 1666–1671). Plaintiff received two MRI scans of his lumbar and thoracic spine. (R. 1452-54, 1667–70, 1708–10). The first shows mere degenerative changes and no severe or canal or foraminal stenosis. (R. 1452–54). The second shows a small disc herniation at C5-6 with severe bilateral neural foraminal narrowing. (R. 1667–70, 1708–10). Plaintiff also received two EMGs. (R. 1573, 1654-55). The first found L5 radiculopathy and the second found the absence of cervical radiculopathy. (R. 1573, 1654–55). At the time of the exams, VA providers reported Plaintiff had full range of motion, normal strength, normal gait, and lack of sensory deficits in his legs. (R. 20, 1673, 1860).

The VA placed Plaintiff on medication for asthma, blood pressure, diabetes, and muscle relaxing, (R. 978–992), and determined that he was "100% total[ly] and permanent[ly]" disabled, (R. 24, 265).

Plaintiff also received mental health services from the VA. A Board-certified psychiatrist, Dr. John Ragone, treated Plaintiff. (R. 931, 966, 1113–14). He diagnosed Plaintiff with major depressive disorder and treated this condition with three medications. (R. 930–31). These medications stabilized Plaintiff with no complaint of adverse effects. (R. 1213, 1523).

### 2. Fabio Orozco, M.D.

Dr. Orozco, Board-certified orthopedic surgeon at Rothman Institute, treated Plaintiff for his right knee pain. Plaintiff received an MRI of the knee, (R. 318) and Dr. Orozco diagnosed him with degenerative joint disease, (R. 397). Dr. Orozco performed a partial patellofemoral arthroplasty. (R. 392, 397–98).

### 3. Lewis Lazarus, Ph.D.

At the request of the Commissioner, Dr. Lazarus, psychologist, evaluated Plaintiff who represented to Dr. Lazarus that he felt sad, irritable, and short tempered. (R. 923–24). Dr. Lazarus reported that Plaintiff was well oriented, able to perform simple calculations and Serial 3s adequately with the occasional mistake, had good insight, good judgment, and was functioning intellectually within the average range. (R. 924–25) He also found that Plaintiff's recent memory skills, remote memory skills, attention, and comprehension were mildly compromised. (R. 924). As a result, Dr. Lazarus diagnosed Plaintiff with pain and adjustment disorder with mixed anxiety and depressed moods. (R. 925).

### 4. Rocco Santoro, D.C.

Dr. Santoro, a chiropractor, reported that he treated Plaintiff for back, neck, and hip pain. (R. 1686–87) He represented that treatment was providing Plaintiff good relief. (R. 1692).

5. <u>Melonie Boileau</u>

Ms. Boileau, licensed clinical social worker, treated Plaintiff in individual supportive psychotherapy aimed at teaching him techniques and coping strategies to decrease his depression and anger. (R. 526, 531–34, 541–42, 557, 571–74, 578). She regularly reported that Plaintiff was oriented, logical, goal directed, and that his insight and judgment were fair. (R. 534, 542, 557, 572, 578).

### D.     The ALJ's Decision

The ALJ's five-step sequential analysis concluded with a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 24); *see* C.F.R. § 404.1520. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 27, 2012, the alleged onset date. (R. 14). At Step Two, the ALJ found the following severe impairments: degenerative disc disease, degenerative joint disease, osteoarthrosis, asthma, De Quervain's tendonitis, obesity, and major depressive disorder. (R. 15). At Step Three, the ALJ found that none of Plaintiff's impairments, or any combination thereof, met or medically equaled the severity of an impairment listed at 20 C.F.R. Part 404, subpart P, Appendix 1. (R. 15).

Before proceeding to Step Four, the ALJ determined that Plaintiff retained the following residual functioning capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for:

> occasional pushing and pulling with the lower extremities; occasional climbing, balancing, stooping, kneeling, crouching, and crawling; frequent handling, fingering, and feeling with the non-dominant right hand; frequent exposure to extreme cold and heat, wetness and humidity, dust, fumes, odors, and pulmonary irritants, and hazards such as unprotected heights and moving machinery. [Plaintiff] also retains the ability to perform unskilled work involving routine and repetitive tasks with occasional changes in the work setting; no quota or production based work but rather goal oriented work; and occasional interaction with coworkers, supervisors, and the public.

(R. 18). Based on the testimony of the Vocational Expert ("VE"), the ALJ found that, although Plaintiff could not perform any of his past relevant work, he could perform the jobs of final assembler, mounter, and sorter, and that a significant number of such jobs existed in the national economy. (R. 24–25).

### III. LEGAL STANDARD

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by "substantial evidence." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner of the Social Security Administration has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original, citations and footnote omitted).

Following review of the entire record on appeal from a denial of benefits, the court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or

8

without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016).

## IV. DISCUSSION

On appeal, Plaintiff asserts that the ALJ's findings in Step Two and Step Four were not supported by substantial evidence and that the ALJ did not provide sufficient rational for rejecting the opinions of Dr. Boileau and the VA. For the following reasons, the Court finds that the ALJ's conclusions are supported by substantial medical evidence in the record and will affirm the final decision of the Acting Commissioner.

### A. Step Four Evaluation: Residual Functional Capacity

Plaintiff alleges three errors in the ALJ's determination of Plaintiff's RFC: (1) that the ALJ failed to incorporate Plaintiff's need to elevate his legs; (2) that the ALJ failed to consider the qualifying testimony of the VE; and (3) that the ALJ failed to account for the mental side effects of Plaintiff's treatment. The Court finds all three arguments unpersuasive and will address each in turn.

"Residual functional capacity is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (quoting *Hartranft*, 181 F.3d at 359 n. 1); *see also* 20 C.F.R. § 404.1545(a). Here, the ALJ found that

Plaintiff had the residual functioning capacity to perform sedentary work. (R. 18). The SSA defines work as "sedentary" when it

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

In determining an individual's residual functional capacity in step four, the ALJ must consider all relevant evidence—including "medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (citing 20 C.F.R. § 404.1545(a)); *see* 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a), 404.1546; *Burnett*, 220 F.3d at 121. The ALJ's finding must "be accompanied by a clear and satisfactory explanation of the basis on which it rests," sufficient for reviewing court to determine if the decision is supported by substantial evidence. *Cotter v. Harris*, 642 F.2d 700, 704–05 (3d Cir.1981). The ALJ, however, is not required "to make reference to every relevant treatment note in a case where the claimant, . . . has voluminous medical records." *Fargnoli*, 247 F.3d at 42. When presented with conflicting evidence, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993); *Plummer*, 186 F.3d at 429 (citing *Stewart v. Sec'y of Health, Educ., & Welfare*, 714 F.2d 287, 290 (3d Cir.1983)) ("The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects.").

### 1. Plaintiff's Need To Elevate His Legs

Plaintiff first argues that the ALJ erred in failing to incorporate the overwhelming and corroborated evidence of Plaintiff's need to elevate his legs or explain the evidence's absence in

10

the RFC. (Pla. Br., ECF No. 11 at 14–18). In support, he cites (1) the degenerative discs and facet hypertrophic changes found in the July 2016 MRI; (2) Plaintiff's chiropractor's diagnosis and treatment; and (3) Plaintiff's complaint of back pain at an 8 out of 10. (Pla. Br., ECF No. 11 at 16) (collecting Record citations).

First, the ALJ did consider the testimony Plaintiff raises. The ALJ summarized the MRI results, chiropractor's testimony, and Plaintiff's testimony, and made a finding of sedentary work with only "occasional pushing and pulling with the lower extremities; occasional climbing, balancing, stooping, kneeling, crouching, and crawling" to accommodate for any physical limitation that Plaintiff may have. (R. 18–22).

Further, there is simply no medical evidence in the record to corroborate Plaintiff's testimony on the need to elevate his legs. The only times that a recommended treatment of elevation is mentioned in the medical evidence was in 2012 for a foot fracture, (R. 787, 848), and after his 2019 knee replacement surgery, (R. 1971), both of which relate to acute injuries that would not support Plaintiff's testimony of an ongoing need to elevate his legs. This Court finds that the ALJ did not err in failing to consider Plaintiff's medically unsupported testimony.

### 2. The Vocational Expert Testimony

Plaintiff argues that the ALJ failed to consider the VE's testimony indicating that the three jobs identified in the national economy—final assembler, mounter, and sorter—have initial training periods in which supervision and interaction between employee and supervisor "range[] from occasional to frequent." (R. 86). Plaintiff contends the evidence directly contradicts the ALJ's findings that Plaintiff—with an RFC limited to only occasional interaction—can perform these jobs. (R. 18, 25, 26).

S.S.R. 00-4p explains that the Dictionary of Occupational Titles ("DOT") "lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings. A VE . . . may be able to provide more specific information about jobs or occupations than the DOT." The ALJ is required to resolve apparent conflicts between the VE testimony and the DOT. SSR 00-4p, 2000 WL 1898704, *2.

Here, the ALJ's determination that Plaintiff could perform work in three jobs available in the national economy is supported by the VE's testimony and the DOT. The VE's testimony that the temporary initial training for these jobs may include a range of interaction between occasional and frequent merely elaborated on the range of requirements for the job but did not apparently conflict with the DOT's determination which only presents "maximum requirements of occupations as generally performed." S.S.R. 00-4p. Further, the VE directly testified that his findings were consistent with the DOT and Plaintiff did not object to the VE's qualifications at the hearing. (R. 82, 85). Plaintiff has therefore failed to show that the VE testimony and the DOT were in conflict or that the ALJ's determination was not based in substantial evidence.

### 3. The Mental Side Effects of Plaintiff's Treatment

Plaintiff's final challenge to the RFC determination is that the ALJ failed to consider Plaintiff's "significant mental limitations in understanding, remembering, and applying information, as well as concentration, persistence and pace due to his prescribed medications for his physical conditions." (Pla. Br., ECF No. 11 at 27). This Court disagrees, finding that the ALJ specifically considered such evidence and addressed it in his opinion. *See e.g., Burns v. Barnhart*, 312 F.3d 113, 130 (3d Cir. 2002) (citing *Stewart*, 714 F.2d at 290).

20 C.F.R. § 416.929(c)(3) requires the ALJ to consider among other things "what medications, treatments, or other methods" a Plaintiff uses to alleviate symptoms as well as the

"type, dosage, effectiveness, and side effects of any medication" the Plaintiff takes as one of many factors in evaluating a Plaintiff's subjective complaints. The ALJ may reject or discredit subjective complaints only by explaining their reasoning and providing contradictory evidence in the record. *Burnett*, 220 F.3d at 119 (citing *Cotter*, 642 F.2d at 704-05).

Here, Plaintiff has failed to point to anything in the medical evidence to support Plaintiff's subjective complaints of the side effects of his medications—in fact Plaintiff exclusively cites to his own testimony. The ALJ considered this testimony, summarizing Plaintiff's complaints of side effects, but also pointed to contradictory evidence in the record. For example, Dr. Lazarus noted that Plaintiff's memory skills, attention, and concentration were "mildly compromised," while his ability to perform simply calculations and digit recitation were adequate. (R. 23). Plaintiff's intellectual function was within average range and his insight and judgment were good. (R. 23). Additionally, psychiatry notes, summarized by the ALJ in his opinion, show that Plaintiff did not complain of any side effects to his medications and in fact advised his psychiatrist that the medications were working well with no adverse effects. (R. 22, 1213, 1523). The record further shows a recent 2018 note stating that Plaintiff is oriented and logical with memory intact. (R. 22, 1511).

It is therefore clear to the Court that the ALJ considered all of the evidence regarding the mental side effects of Plaintiff's medications. It is further clear to the Court that the ALJ did not err in failing to find a mental limitation in Plaintiff's RFC based on the side effects of his medications, to the contrary, such a finding would not have been supported by the medical evidence.

### B. The ALJ's Assessment of Plaintiff's Cervical Conditions at Step Two and Four

Plaintiff argues that the ALJ failed to assess his cervical conditions in the Step Two

analysis, and subsequently failed to incorporate associated limitations into his RFC. This Court disagrees.

"The burden placed on an applicant at step two is not an exacting one." *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). Step Two is merely a "de minimis screening device" used to "dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). ALJs need not use any magic words or particular format to present their analysis; their opinions should be read "as a whole." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *see also Cotter*, 650 F.2d at 482. The ALJs' decisions instead need only to demonstrate that there is substantial evidence supporting their conclusions. *Hernandez v. Comm'r of Soc. Sec.*, 89 Fed. Appx. 771, 774 (3d Cir. 2004).

Plaintiff's first argument fails on two grounds. First, the ALJ specifically found that Plaintiff's degenerative disc disease was a severe impairment. (R. 15). Second, because the ALJ in this case found that Plaintiff did in fact suffer from severe impairments, any failure to address other potentially severe impairments is harmless error so long as the impairment is considered regarding the RFC or would not affect the outcome of the case. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007).

Turning to Plaintiff's second argument, Plaintiff contends that the ALJ failed to incorporate limitations associated with Plaintiff's cervical conditions into his RFC—specifically arguing that the ALJ impermissibly dismissed Plaintiff's cervical radiculopathy diagnosis simply because EMG was negative. This argument also fails.

ALJs formulate claimants' RFCs based on all the relevant evidence, including the medical records, medical source opinions, and claimants' allegations and description of their limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c). "A disability may be 'medically determined' for purposes

14

of the Act even when a doctor's opinion is not supported by objective clinical findings." *Rossi v. Califano*, 602 F.2d 55, 58 (3d Cir. 1979); *see* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Claimants have the burden of presenting evidence that they do not have the RFC to perform any substantial gainful activity. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1545(a)(3); *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Here, the ALJ found evidence in the record to support the finding that Plaintiff's FRC limited him to sedentary work, *see* 20 CFR 404.1567(a); 416.967(a), with an exception for "occasional pushing and pulling with the lower extremities; occasional climbing, balancing, stooping, kneeling, crouching, and crawling; frequent handling, fingering, and feeling with the non-dominant right hand." (R. 18). Contrary to Plaintiff's position, there is substantial evidence in the record to support the ALJ's determination. One MRI scan of Plaintiff's lumbar spine shows mere degenerative changes and no severe or canal or foraminal stenosis, and a second shows a small disc herniation at C5-6 with severe bilateral neural foraminal narrowing. (R. 20, 22, 1452–54, 1667–68, 1710). The record also contains two EMGs—one finding L5 radiculopathy and another finding the absence of cervical radiculopathy. (R. 20, 22, 1573, 1654–55). Despite some of these negative tests, the ALJ cited to progress notes from the time showing Plaintiff's full range of motion, normal strength, normal gait, and lack of sensory deficits in his legs. (R. 20, 1673, 1860). Finally, the medical evidence shows ongoing management as to Plaintiff's neck and back pain, and the ALJ acknowledged the "exacerbations and remissions in Plaintiff's condition." (R. 20) (collection Record citations).

Therefore, while the ALJ did not directly address the diagnoses for cervical radiculopathy—which only appears sporadically in the medical evidence—he reviewed and discussed all the relevant medical tests and progress notes that would have supported such a finding, showing that he considered it in his analysis at step four.

### C. The Opinions of Dr. Boileau and the VA

Plaintiff argues that the ALJ improperly rejected the opinions of Dr. Boileau and the VA without producing contradictory medical evidence. This Court disagrees, finding the ALJ properly explained the weight granted to each opinion.

When faced with conflicting opinion evidence, an ALJ has significant discretion in choosing whom to credit. *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) (citation omitted) ("[T]he ALJ is entitled to weigh all evidence in making its finding . . . [and] is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences."). In general, ALJ should accorded great weight to treating physicians' reports, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir. 1987); 20 C.F.R. § 404.1527(d)(2). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429 (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir. 1985)). 20 C.F.R. § 404.1527(c)(1–6) provides a list to consider in determining the weight afforded to opinions, including the treatment relationship, length of relationship, frequency of examination, nature and extent of the treatment relationships, supportability of the opinion afforded by the

medical evidence, consistency of the opinion with the record as a whole, and specialization of the treating physician. *Russo v. Astrue*, 421 Fed. Appx. 184, 191 (3d Cir. 2011).

Here, the ALJ considered the testimony of Dr. Boileau who stated that Plaintiff continued to have significant depressive symptoms that impacted his work despite continued medication and treatment. (R. 23, 927-28). Assigning limited weight to that opinion, the ALJ explained that the evaluation "does not provide a specific function-by-function assessment of the claimant's ability to perform work-related activities, . . . [and] is not consistent with the preponderance of the evidence." (R. 23). The ALJ specifically pointed to evidence that Plaintiff "was stable on medication and had no more than mildly compromised mental persistence." (R. 23). In short, the ALJ complied with his obligation to consider Dr. Boileau's opinion, and explained his reasons for rejecting it." *Plummer*, 186 F.3d at 429. Accordingly, this Court finds Plaintiff's arguments unavailing.

The ALJ also considered the opinion of the VA who evaluated Plaintiff and determined that he was "100% total[ly] and permanent[ly]" disabled. (R. 24, 265). The ALJ explained that he did not grant this opinion much weight because the VA applies a different definition for disability and the ALJ was required to make a finding under Social Security Act standards. (R. 24). He followed this explanation by stating that "[a]s explained throughout this decision, the claimant is not disabled within the meaning of the [SSA]." (R. 24).

"Although a determination by a different agency that a claimant is disabled is not binding on the Social Security Administration, such determinations are nonetheless evidence of a disability and 'cannot be ignored.'" *Pratts v. Comm'r of Soc. Sec.*, No. 13-2372, 2015 WL 5139148, at *14 (D.N.J. Sept. 1, 2015) (citations omitted); *see Kane v. Heckler*, 776 F.2d 1130, 1135 (3d Cir. 1985) ("Such a determination by another government agency is entitled to substantial weight." (citing

17

*Lewis v. Califano*, 616 F.2d 73, 76 (3d Cir. 1980))).[2] "District courts in this Circuit have . . . found reversible error where 'the ALJ rejected the V.A. determination solely on the differences between the standard for disability between the V.A. and the SSA, with no analysis of the facts,' or where the court 'cannot discern from the record that the ALJ placed substantial weight on the determination of the V.A. or appropriately considered it.'" *Pratts*, 2015 WL 5139148 at *15 (citing *Solomon v. Colvin*, Civ. No 12-1406, 2013 WL 5720302, at *16 (D. Del. Oct. 22, 2013), then citing *Sharpe v. Colvin*, No. 14-00779, 2015 WL 574623, at *21 (M.D. Pa. Feb. 11, 2015)).

As always, the ALJ may reduce the weight given to VA determinations if they provide a proper explanation. *See Drzal v. Saul*, No. 18-10316, 2020 WL 1528039, at *12 (D.N.J. Mar. 31, 2020) (upholding the ALJ's decision to afford the VA's determination little weight because the ALJ provided two specific reasons for doing so: (1) the VA's decision was not binding on the ALJ, and (2) it did not include a function-by-function assessment of the claimant's work related limitations); *Durden v. Colvin*, 191 F. Supp. 3d 429, 454 (M.D. Pa. 2016) (upholding ALJ decision which "explained that the VA rating determination was inconsistent with the medical evidence"); *Reeves v. Colvin*, Civ. No. 3:15–444, 2015 WL 4601199, at *12 (M.D. Pa. July 30, 2015) (upholding an ALJ decision which discounted a V.A. disability determination because the ALJ

---

[2] The SSA has amended 20 C.F.R. § 404.1504 and rescinded SSR 06-03p since Plaintiff's initial application. The new regulation provides that the SSA *will not provide any analysis* of a decision made by any other governmental agency or a non-governmental entity about a claimant's disabled disability status—a divergence from the prior regulation which did not address the level of analysis needed and only stated that such decisions were not binding on the SSA. *See* 20 C.F.R. § 404.1504; Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017); Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15263 (Mar. 27, 2017). This Court will evaluate Plaintiff's claim pursuant to the earlier regulation since he filed his claim on July 17, 2015, and the revisions only apply to claims filed after March 27, 2017.

clearly stated that she considered the VA's determination and provided a comprehensive reason for granting it only some weight).

Admittedly, in this case, the ALJ provided a limited explanation for his decision to afford the VA determination little weight. He mentioned that the SSA and VA disability determinations are different but also clearly relied upon and performed his independent evaluation of the medical evidence, including that from the VA medical staff, as it pertained to the SSA's disability determination—stating that his analysis had led him to the conclusion that Plaintiff was not disabled under the SSA. Even if the ALJ's discussion of the VA determination was insufficiently detailed, such error would be harmless in light of the evidence in the case and a remand would not alter the outcome. *See e.g., McCleary v. Colvin*, 187 F. Supp. 3d 497, 543 (M.D. Pa. 2016) (citing *Bivins ex rel. N.B. v. Astrue,* No. 5:11–51, 2011 WL 5859954, at *5 (M.D. Ga. Nov. 22, 2011) ("Considering the totality of the medical evidence . . . . A remand to have the ALJ perfect the record as to this statement would serve no practical purpose, would not alter the ALJ's findings, and would be a waste of judicial and administrative resources")).

V.    **CONCLUSION**

For the foregoing reasons, the Court will affirm the final decision of the Acting Commissioner. An appropriate Order will be entered.

Date: March 15, 2022

      /s/ *Christine P. O'Hearn*
      **Christine P. O'Hearn**
      **United States District Judge**